UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENDON NATIONAL INSURANCE COMPANY, a New Jersey Corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>INSURANCE COMPANY OF THE WEST, a Texas Corporation, et al.,<br><br>　　　　　　Defendants.<br>_____<br>INSURANCE COMPANY OF THE WEST,<br><br>　　　　　　Counter-Claimant,<br><br>　　v.<br><br>CLARENDON NATIONAL INSURANCE COMPANY,<br><br>　　　　　　Counter-Defendant.<br>_____ | CV F 99 5461 SMS<br><br>ORDER DETERMINING THE PERTINENT PREJUDGMENT INTEREST RATE<br><br>ORDER DIRECTING THE PARTIES TO FILE A JOINT PROPOSED FINAL ORDER AND JUDGMENT DECLARING THE PARTIES' RIGHTS AND OBLIGATIONS NO LATER THAN SEPTEMBER 20, 2006 |

On August 23, 2006, the parties submitted a joint proposed final order; on August 29, 2006, the parties submitted letter briefs concerning the one disputed matter involved in the proposed final order, namely, the pertinent rate of prejudgment interest.

1

I. <u>Prejudgment Interest Rate</u>

Clarendon alleged in the first amended complaint (FAC) that it had paid money to defend and settle the <u>Moore</u> action; the Clarendon policy did not cover the loss; the ICW policy covered the loss; and therefore Clarendon was entitled to recoup the entire amount from ICW under the "law of equitable subrogation and equitable indemnity." (FAC ¶¶ 2-3.)

The basis of the Court's ruling was that ICW's policy provided coverage and Clarendon's did not (except for coverage under the ICC endorsement that ran to third parties only and thus was not implicated in this dispute between insurers). The Court so concluded because the ICW policy specifically described the truck, while the Clarendon policy did not. (Judge Coyle's order of June 30, 2000 p. 14.) It rejected ICW's contention that Clarendon was required to provide primary coverage and a defense for H&G, G&P, and their agents and contractors and employees pursuant to the MCS-90 attached to Clarendon's policy for H&G; indeed, it concluded, consistent with <u>Canal Ins. Co. v. First General Ins. Co.</u>, 889 F.2d 604 (5th Cir. 1989), that where the policy itself does not provide coverage except to third-party members of the public through operation of the ICC endorsement, the policy provides no coverage for purposes of disputes among insurers over ultimate liability. (<u>Id.</u> pp. 14-17.) Judge Coyle expressly decided that "as against ICW, the Clarendon policy provides no coverage." (Order p. 18.) Judge Coyle further concluded that where an insurer's liability arises only from a governmentally required filing, the insurer is entitled to indemnity for defense fees from the insurer whose policy provides

coverage. (<u>Id.</u> p. 18.) Because H&G's liability arose from the MCS-90 only, then Clarendon was entitled to reimbursement from ICW for the cost of defending H&G. (<u>Id.</u>) With respect to reimbursement, the authority relied on by Judge Coyle stands for the proposition that where ICW has a duty to defend a party under its policy, and Clarendon did not but provided a defense pursuant to the endorsement, ICW must reimburse Clarendon for its costs of defense and settlement. <u>Canal</u>, 889 F.2d at 612.

Both parties here agree that California law governs the rate of interest. ICW asserts that the liability it has towards Clarendon is a non-contractual liability in the nature of equitable contribution, and therefore the rate of interest due to Clarendon is the non-contractual interest measure of seven per cent set by Cal. Const., Art. 15, § 1, which sets forth a basic limit of seven per cent interest on any account after demand.

An equitable contribution claim carries a seven per cent interest rate. Equitable contribution is a loss-sharing procedure among several insurers who insure the same risk at the same level (e.g., all primary insurers), and one pays the entire loss. Croskey & Heesman, <u>Cal. Practice Guide, Insurance Litigation</u> § 8:65.1 p. 8-23 (2005). A claim for equitable contribution is independent of the contract or the basis for the insured's right; the insurer pursuing an equitable contribution claim does not stand in the shoes of the insured but rather has a separate claim against the other insurers on the risk. <u>Fireman's Fund Ins. Co. v Maryland Cas. Co.</u>, 65 Cal.App.4th 1293-94 (1998).

Equitable indemnity, on the other hand, is a loss-shifting procedure in which one party pays a debt for which another is

3

primarily liable and which in equity and good conscience should have been paid by the latter party. <u>United Services Auto. Ass'n v. Alaska Ins. Co.</u>, 94 Cal.App.4th 638, 644-45 (2001).

Likewise, equitable subrogation permits a party who has been required to satisfy a loss created by a third party's wrongful act to step into the shoes of the loser and pursue recovery from the responsible wrongdoer; in the context of insurance, it means that the paying insurer may be placed in the shoes of the insured and may pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid. <u>Id.</u> at 645. As now applied the doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. <u>Hartford Cas. Ins. Co. v. Mt Hawley Ins. Co.</u>, 123 Cal.App.4th 278, 287. The elements of equitable subrogation have been described generally as 1) payment was made by the subrogee to protect his own interest, 2) he did not act as a volunteer; 3) the debt paid was one for which he was not primarily liable; 4) the entire debt must have been paid; 5) subrogation must not work any injustice to the rights of others. <u>Employers Mut. Liability Ins. Co. of Wisconsin v. Pacific Indemnity Co.</u>, 167 Cal.App.2d 369, 376 (1959). The elements of an insurer's cause of action for equitable subrogation are: (1) the insured has suffered a loss for which the party to be charged is liable; (2) the insurer has compensated for the loss; (3) the insured has existing, assignable causes of action against the party to be charged,

4

which the insured could have pursued had the insurer not compensated the loss; (4) the insurer has suffered damages caused by the act or omission which triggers the liability of the party to be charged; (5) justice requires that the loss be shifted entirely from the insurer to the party to be charged; and (6) the insurer's damages are in a stated sum, which is usually the amount paid to the insured. United Services Auto. Ass'n v. Alaska Ins. Co., 94 Cal.App.4th 638, 645-46 (citing Gulf Ins. Co. v. TIG Ins. Co. (2001) 86 Cal.App.4th 422, 432 [103 Cal.Rptr.2d 305].)

Here, the subrogee (Clarendon) who pays the obligation of the principal debtor (ICW) to the subrogor (the creditor or claimant, and here ICW's insured, on whose behalf the payments were made) is equitably subrogated to the claimant or subrogor and succeeds to the subrogor's rights against the obligor. Hartford Cas. Ins. v. Mt. Hawley Ins., Co., 123 Cal.App.4th 278, 287 (2004). Subrogation rights are purely derivative. United Services Auto. Ass'n v. Alaska Ins. Co., 94 Cal.App.4th 638, 645.

Because Clarendon and ICW did not insure the same risk at the same level, they were not both primarily liable, and thus the nature of the claim for reimbursement which Clarendon successfully brought in this Court was not an equitable contribution claim. It was more in the nature of equitable subrogation.

The right to which Clarendon has become subrogated is the right to coverage defined by the ICW policy. (Cmplt. p. 4,[1] FAC p. 1.) It is thus a contractual right to which Clarendon has

---

[1] The FAC incorporated by reference all the allegations set forth in the initial complaint.

succeeded and which defines the obligation in question.

Hartford Accident & Indemnity Co. v. Sequoia Ins. Co., 211 Cal.App.3d 1285, 1306-07 (1989), which applied the seven per cent interest rate and which was cited by ICW, involved a contribution action where the dispute concerned which of multiple policies was primary and which was excess or secondary (p. 1297, 1301-02), and the parties conceded that the relevant statute was Cal. Civ. Code § 3287(a). The precise question of the applicable rate of prejudgment interest was not addressed, and the discussion of interest was in the context of the certainty of the sum due.

In North River Ins. Co. v. American Home Assurance Co, 210 Cal.App.3d 108, 116 (1989), also cited by ICW, the parties agreed that the prejudgment interest rate of seven per cent per annum applied pursuant to Cal. Civ. Code § 3287, which provided for prejudgment interest generally and specifically for every person entitled under a judgment to receive damages based on a cause of action in contract where the claim was unliquidated. Id. pp. 116-17. However, as Clarendon notes, this case, as well as Hartford Accident and Indemnity Co., predated the enactment of Cal. Civ. Code § 3289 in its present form, in which § 3289(b) provides that if a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of ten percent per annum after a breach. (Cal. Stats. 1985, ch. 663, § 1.)

An action for breach of an insurance contract against an insurance company to recover policy benefits is an action to recover damages for breach of contract. Pilimai v. Farmers Ins. Exchange Co., 39 Cal.4th 133, 146 (2006). The California

6

statutory rate of prejudgment interest chargeable after a breach of contract is ten per cent per annum. Cal. Civ. Code § 3289(b); Chiariello v. Ing Groep NV, 2006 WL 1889920 at *5 (N.D.Cal. July 10, 2006).

In summary, even though equitable principles are involved in Clarendon's recovery, the right to which Clarendon succeeded and which provides the basis of its recovery is the contractual obligation of ICW under its policy of insurance. Therefore, the Court concludes that pursuant to Cal. Civ. Code § 3289(b), the applicable rate of prejudgment interest is ten per cent per annum after the breach.

II. Submission of Joint Proposed Final Order

It is the Court's understanding that the parties have agreed to all other matters involved in the form and content of a proposed final order, declaration of rights, and judgment.

The Court has reviewed the proposed final order submitted on August 23, 2006. The Court assumes that pursuant to the ruling stated above, the parties will be able to fill in all amounts that appear as blanks in the proposed order filed on August 23, 2006. Because the order is in fact a judgment as well, the document should be entitled as a final order and judgment and not merely a final order. Further, because the procedure for taxing costs is set forth in the pertinent federal and local rules, the Court prefers that the parties not specify, as they have presently done in paragraph number seven, the time for the Court's determination of taxable costs.

Accordingly, the parties ARE DIRECTED to prepare a joint stipulated proposed final order and judgment consistent with the

7

Court's ruling with respect to the applicable prejudgment interest rate, and incorporating the matters mentioned in the previous paragraph. The parties should e-file the proposed order and judgment in PDF and also send it in Word or Word Perfect to the order box of the undersigned Magistrate Judge. The document should be submitted no later than September 20, 2006.

IT IS SO ORDERED.

**Dated:   September 8, 2006**                    **/s/ Sandra M. Snyder**
icido3                                             UNITED STATES MAGISTRATE JUDGE